IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

| | |
|---|---|
| **James C. Sherrod**<br>**Plaintiff** | **CIVIL ACTION NO.: 04-208 ERIE**<br>**JUDGE SEAN J. McLAUGHIN/MAGISTRATE**<br>**JUDGE SUSAN PARADISE BAXTER** |

vs.

**Booker T. Washington Center**
**Defendant**

### PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

**AND NOW,** comes the Plaintiff, James C. Sherrod, by and through his attorney, Edith Benson, and files the within Statement of Disputed Material Facts in response to Defendant's Motion for Summary Judgment, and states the following:

1. Plaintiff, James C. Sherrod, an African American, was fired by the Defendant, Booker T. Washington (BTWC or Center), because of his race. Complaint, Paragraph No. 4; Answer, Paragraph Nos. 4 and 16; Defendant's Exhibit's 4.
2. At the time of his dismissal, Plaintiff was in good standing with the Center. Complaint, Paragraph No.10; Plaintiff's Affidavit; Plaintiff's Deposition, Pg. 65; Answer, Paragraph No.10; Defendant's Exhibit 13.
3. At the time of his dismissal, Plaintiff was not under any disciplinary actions with regard to his performance. Plaintiff's Affidavit; Plaintiff's Exhibit No.1; Plaintiff's Deposition, Pg. 65; Defendant's Exhibits Nos. 2a, 2b, and 2c.
4. Plaintiff did not submit a verbal resignation or attempt to rescind a verbal resignation. Complaint, Paragraph Nos. 4, 9, 10, and16; Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 5-6, 85, and 88; Plaintiff's Exhibit No. 6.
5. Plaintiff 's terms of employment was set forth in writing, providing that "continued positive performance will afford you a long-term employment opportunity". Complaint, No. 8; Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 65, 91-92; Answer, Paragraph No. 9.
6. Plaintiff served as Executive Director of BTWC until receipt of a termination letter dated September 24, 2002. Complaint, Paragraphs Nos. 7-9,16, and 21; Plaintiff's Exhibits Nos. 6-7, 9-11, 16; Defendant's Exhibit No.13; Answer, Paragraph Nos. 4 and 9.
7. Plaintiff 's authority to hire, assign, promote and/or disciplinary staff was controlled and limited by BTWC's By-Laws and institutional practices. Plaintiff's Affidavit; Plaintiff's Exhibit No. 18 and 19.
8. Plaintiff's job description, contained in Defendant's Exhibit No. 3, was superseded by Defendant's revised By-Laws and Standing Committees' responsibilities. Plaintiff's Affidavit; Plaintiff's Exhibits Nos. 18 and 19.
9. Prior to his termination, Plaintiff had received a positive evaluation and a pay raise. Plaintiff's Affidavit; Plaintiff Deposition, Pg. 65.

10. Consistent with organizational policy and practice, prior to going on a scheduled vacation from August 5-August 9, 2002, Plaintiff followed Board directive and appointed Brian Bessetti, a Caucasian, and the Center's Controller, to function as acting Executive Director. Complaint, Paragraph Nos. 10-11; Answer, Paragraph No. 11; Defendant's Exhibits Nos. 4, 15-16; Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 56-57.
11. As Acting Executive Director, Mr. Bessetti had the same authority as Mr. Sherrod, including approval of program expenditures, investigating service complaints, and managing staff. Complaint Nos. 10-12; Answer, Paragraph Nos. 11-12; Plaintiff's Affidavit; Plaintiff's Deposition, Pg. 28-29; Plaintiff's Exhibit Nos.18-19.
12. Plaintiff learned of the August 6, 2002 incident in the evening at approximately 10:30 or 10: 45 P.M. in a call from the Center's Vice President, Mr. Sean Coleman, which began with Mr. Coleman asking "What the fuck are those niggers doing?" Complaint, Paragraph No. 14; Plaintiff's Affidavit; Plaintiff's Deposition, Pg. 21; Answer, Paragraph No.14; Coleman's Deposition.
13. After learning of the incident, Plaintiff advised Mr. Coleman that he would look into the matter; reported to work the next day and attempted to learn the facts surrounding the incident, but was hampered in his investigation by Mr. Coleman. Complaint, Nos. 14-15; Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 25-26, 66-67; Plaintiff's Exhibit No. 15; Answer, Paragraph Nos. 14-15.
14. On at least three (3) separate occasions, when talking to Mr. Sherrod, Mr. Coleman referred to African American employees involved in the incident as "niggers" with Mr. Sherrod in person reacting in disbelief. Plaintiff's Deposition, Pgs. 21-22.
15. Mr. Coleman confirmed in a staff meeting held on August 13, 2002, a day after Mr. Sherrod was relived of his duties, that he had referred to African American employees as "niggers". Defendant's Exhibits No. 15-16.
16. At the insistent of Mr. Coleman, who directed Mr. Sherrod "to fire those Niggers", Mr. Sherrod terminated the three (3) African American employees. Complaint, Paragraph Nos. 15,17; Plaintiff's Exhibit No. 8; Defendant's Exhibits Nos. 15-16 Answer, Nos. 15,17; Coleman's Deposition.
17. Within days of this directive, on August 12, 2002, with Mr. Coleman having prevented a complete and thorough investigation, Sherrod was relieved of his duties. Complaint, Paragraph No.16; Plaintiff's Affidavit; Plaintiff's Exhibits Nos. 6-7, 9-16; Answer No. 16.
18. Plaintiff applied for and was awarded Unemployment Compensation, with the Unemployment Board finding that "the Employer did not provide firsthand information showing that the Claimant's work was unsatisfactory." Plaintiff's Exhibit No. 2.
19. The field trip that led to the incident in questioned was approved by Mr. Bessetti, not Plaintiff. Complaint, Paragraph Nos. 12,18; Plaintiff's Exhibit No. 5; Plaintiff's Affidavit; Answer 12 and 18.
20. BTWC was aware that Mr. Bessetti was in charge of the agency on August 6, 2002 and took no action against him. Complaint, Paragraph No. 11; Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 56-57; Answer, No.11; Defendant's Exhibit Nos. 4, 15-16.

21. As a result of actions taken by the Center's Board on August 12, 2002, Mr. Sherrod was precluded from performing his job. Complaint, Paragraph No.16; Plaintiff's Affidavit; Plaintiff's Exhibit No. 6; Plaintiff's Deposition, Pgs. 6, 85.
22. At the initiation of BTWC, Mr. Sherrod met with or talked to several Board members regarding his employment status and their offer of a severance package. Mr. Sherrod rejected any such offer and demanded his job back. Plaintiff's Affidavit; Plaintiff's Exhibit Nos. 6, 13, 15-16; Plaintiff's Deposition, Pgs. 47-48.
23. Prior to the August 6, 2002 incident and the Board's actions on August 12, 2002, Mr. Coleman regularly interfered with Mr. Sherrod's ability to perform his job by dropping by the Center on a near daily basis and at times requiring Mr. Sherrod to transport him around town. Plaintiff's Deposition, Pg. 63.
24. As Vice President of BTWC, beginning around April 2002, in the absence of the Board President, Mr. Coleman assumed the President's duties and exercised total and absolute control over events surrounding the August 6, 2002 incident. Plaintiff's Affidavit; Plaintiff's Deposition, Pgs. 78, 95; Plaintiff's Exhibits No. 7, 10-11,13; Defendant's Exhibit 13.
25. At the August 12, 2002 Board meeting, Plaintiff reported on the events of August 6 and 7, including being directed by Mr. Coleman to "fire all those Niggers". Plaintiff's Deposition, Pgs. 23-24, 76-77.
26. All evidence, both direct and circumstantial, point to Plaintiff being terminated because of his race. Complaint, Paragraph Nos. 1-18; Plaintiff's Affidavit; Defendant's Exhibits Nos. 2a-2c, 4, 15-16; Plaintiff's Deposition.
27. Plaintiff testified in his deposition that Mr. Jeffress initially supported him and later applied for his position. Plaintiff's Deposition, Pgs.36-40.
28. The first article that appeared in the Erie Times-News, a newspaper of general circulation, was dated September 5, 2002. Plaintiff was not responsible for this article. The information therein came from BTWC Board or staff. Plaintiff's Deposition, Pgs. 36-40.
29. Plaintiff has not worked at BTWC since August 12, 2002 because of the agency discriminatory actions. Complaint Nos. 7-18, 21; Plaintiff's Deposition; Answer, Nos.4,9-10,16,21 .