IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES C. SHERROD,<br>                Plaintiff<br><br>vs.<br><br>BOOKER T. WASHINGTON CENTER,<br>                Defendant | Civil Action No.  C.A. 04 – 208 ERIE<br><br>Magistrate Judge Susan Paradise Baxter<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANT'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

AND NOW, comes the Defendant, Booker T. Washington Center ("BTWC"), by and through its attorneys, Quinn Buseck Leemhuis Toohey & Kroto, Inc., and files the within Reply to Plaintiff's Brief in Opposition of its Motion for Summary Judgment pursuant to Fed.R.Civ.P. Rule 56, of which the following is a statement:

**I.     FACTS**

The most telling aspect of the Plaintiff's case is not so much in what may be found in his Brief in Opposition and supporting record, but rather in what is absent from it.  Specifically, the lack of any evidence to support his claim of discrimination on the part of BTWC is both clear and resounding.

It is difficult to tell what Sherrod thinks is or is not a material fact, because he has not filed an actual response to BTWC's Concise Statement of Undisputed Material facts, as required by LR 56.1(C).  To the extent that Sherrod's own "Statement of Disputed Material Facts" does not specifically controvert BTWC's contentions, therefore, Defendant's contentions must be deemed admitted for purposes of the instant Motion

for Summary Judgment. LR 56.1(E). These uncontroverted material facts would include those set forth at ¶¶1-8, 11-12, 14-15, 18-23, and 25-42 of BTWC's Statement. Further, Sherrod's contention about Bessetti's purported authority on August 6, 2002 is directly contradicted by his own testimony at pp. 28-29 of his deposition (BTWC Exhibit 5, pp. 28-29).

Sherrod also represents as "material facts" matters that are actually the ultimate question presented by the case. Saying that Sherrod was terminated because of his race (Sherrod Statement, ¶1) is not a material fact; it is the central allegation that he must prove in order to survive summary judgment. Summary judgment would be difficult to come by indeed if the opposing party's burden could be satisfied by merely repeating a central, conclusory, allegation such as "the plaintiff was terminated because of his race."

That is not the applicable standard of review, of course; it remains Sherrod's burden, in the face of BTWC's Motion for Summary Judgment, to bring forward competent evidence sufficient to demonstrate to this Court that his race was either a "determinative" or "substantial motivating" factor in his termination. For the reasons previously set forth, and those noted below, it is respectfully submitted that he cannot do so.

## II. ISSUE

**A. Has Sherrod stated a claim upon which relief might properly be granted pursuant to Title VII of the Civil Rights Act of 1964 (as amended), the Pennsylvania Human Relations Act or 42 U.S.C. §1981?**

Suggested answer in the negative.

    **B.    Has Sherrod stated a claim upon which relief might properly be granted pursuant to Pennsylvania's Wage Payment and Collection Law?**

Suggested answer in the negative.

    **C.    Has Sherrod stated a claim upon which relief might properly be granted pursuant to any claim of defamation or emotional distress?**

Withdrawn by Plaintiff.

## III.    DISCUSSION

### Standard of Review

The standard for granting summary judgment has not changed, but there are elements that bear repeating.

BTWC has clearly met its initial burden, that of identifying for the Court the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Because Sherrod bears the ultimate burden of proof on all issue at trial, BTWC only needed to point out to the court "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.  BTWC did more, however, and identified specific areas of the record – a fair number of them admissions by Sherrod – that contradict and undermine substantial aspects of Sherrod's claims.

It then became Sherrod's responsibility to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).  This must be accomplished by doing more than suggesting that some "metaphysical doubt" exists as to the material facts. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "'The nonmoving party ... cannot rely merely upon bare

assertions, conclusory allegations or suspicion to support its claim.' *Townes v. City of Phila.,* Civ. A. No. 00-CV-138, 2001 U .S. Dist. LEXIS 6056, at *4 (E.D.Pa. May 11, 2001) (quoting *Fireman's Ins. Co. v. DeFresne,* 676 F.2d 965, 969 (3d Cir.1982))." Hartey v. Ethicon, Inc. 2006 WL 724554, *1 (E.D.Pa.) (E.D.Pa., 2006). Sherrod has not met this burden, and his claims cannot survive summary judgment.

  **A.**  **Sherrod both has failed to meet his *prima facie* burden or to satisfy the standards of a "pretext" case with regard to his claims under Title VII of the Civil Rights Act of 1964 (as amended), the Pennsylvania Human Relations Act or 42 U.S.C. §1981.**

Upon a review of the record presented by both the Plaintiff and Defendant in this matter, it is clear that Sherrod cannot satisfy either the "determinative" or "substantially motivating" factor tests mandated by McDonnell Douglas Corp. v. Green, 411 U.S. 792, (1973) or Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), standards that apply equally to Sherrod's PHRA and §1981 claims. Harris v. Smithkline Beecham, 27 F.Supp.2d 569, 576 (E.D.Pa.1998); Tucker v. Merck & Co., Inc. 2005 WL 1176565, *1 (3rd Cir.2005). There is simply no evidence presented that would satisfy either test.

Instead of presenting <u>any</u> evidence that race played a factor in BTWC's decision to terminate Sherrod, or to not terminate Bessetti, Sherrod merely repeats the refrain established in his complaint – Sean Coleman used the word "nigger."

For purposes of this Motion, BTWC must accept this allegation as true. That does not, however, mean that Sherrod's characterization of the word's use is automatically accepted by the Court, or that Sherrod is entitled to any inference or presumption of discriminatory animus, especially not in the face of Coleman's testimony as to his understanding and usage of the word. The fact is that Sherrod must present

more evidence that the utterance of this word by another African-American in order to meet his burden here.

Sherrod misunderstands BTWC's argument in this regard, at least in part because of his insistence on approaching this case with almost a *res ipsa loquitor* theory of liability.  "Sean Coleman used the word 'nigger,' therefore he must hate African-Americans" and "James Sherrod was African-American and was fired; Brian Bessetti was white and was not fired, therefore there was discrimination" are about as deep as the factual and legal analysis of the Plaintiff's case goes.

He views BTWC's argument, in part, as taking the position that someone in a protected class would *never* discriminate against another of that same protected class.  That is not the theory advanced by BTWC, and the Defendant does not seek a legal presumption in that regard.  To the contrary, BTWC's position is simply that <u>neither</u> party is entitled to a presumption.  The case law is clear on that point, and Sherrod cites to no legal authority or record evidence that would dictate he is entitled to any presumption of discrimination based on Coleman's purported use of the word based on the facts of this case.

There is no evidence that Coleman ever referred to Sherrod using any racially objectionable terms.  Likewise, taking Sherrod's claims as true, there is still no evidence that Coleman ever referred to any of the employees terminated as a direct result of the August 6, 2002 incident as "niggers" because they were African-American, nor is there any evidence that Coleman, Jeffres, Gambill or Faulkerson disliked him because of his race (highly improbable, even in the absence of a presumption in favor of BTWC, in that

all were also African-American), or that <u>any</u> member of the Board voted to terminate him for an improper reason. In the face of this record evidence, and in the complete absence of any record evidence in support of his position, it is clear that his claims must fail. It is <u>his</u> burden to come forward with some factual basis for his claims:

> [Plaintiff] had nothing to go on, and when the defendants offered reasons that, if true, revealed that [his] age did not play a role in the demotion, the district judge had no alternative but to grant summary judgment. If proof is difficult, so be it. The plaintiff in an antitrust case can't say: "It is hard to prove the extent of the market, and the defendant's share of sales; let's bypass that toughie." Sometimes a detailed search for explanations is so unlikely to be productive that courts devise rules--the *per se* rule in antitrust, *res ipsa loquitor* in torts--to shortcut the process. But employers do not base discharges and demotions on forbidden factors so often that the plaintiff may skip proof of causation. Federal law addresses a small subset of employment decisions; a plaintiff must show that his case is in that subset.

<u>Monroe v. Children's Home Ass'n of Illinois</u>  128 F.3d 591, *594 (C.A.7 (Ill.),1997).

"There is no doctrine in Title VII equivalent to *res ipsa loquitur* permitting the Court to presume liability unless Defendants come forward with exonerating evidence." <u>Gonzalez v. City of New York</u>  354 F.Supp.2d 327, *343 (S.D.N.Y.,2005).  The burden of proof always rests with Sherrod, who clearly has failed to meet it.

Other <i>prima facie</i> Elements

Sherrod has still failed to demonstrate that he was qualified for the position of Executive Director, or that other, similarly situated, employees outside of his particular race were treated more favorably than he, the second and fourth elements of his *prima facie* claim, and (with regard to his qualifications and performance) part of BTWC's "legitimate, non-discriminatory" basis for Sherrod's ultimate termination.

Sherrod's evaluations (Exhibits 2(a)-(c)) have not been effectively challenged. In his Brief, Sherrod argues that he had no negative evaluations. The records, however, speak for themselves. Sherrod begins at a marginal "acceptable" rating in his first review (BTWC Exhibit 2(a)), then drops to a "needs improvement" rating in his second (BTWC Exhibit 2(b)), and back up to a lackluster "acceptable" (though still not as high a review as his first) rating in his third (BTWC Exhibit 2(c)). It is clear that as of August 2002, the Board of BTWC no longer had confidence in Sherrod's abilities.

As noted in the termination letter, and in both Coleman's and Jeffres's Depositions, Sherrod's termination was not simply based on the bare occurrences of August 6, 2002, a contention that Sherrod simply will not let go of. Sherrod, himself, testified that several Board members did not care for him for some time before August 6, 2002, and he thought that at least two (2) of them wanted his job. BTWC Exhibit 5, pp.14-17, 96. As evidenced by his evaluations, Sherrod's performance impressed no one at this time, and his actions upon being notified of the happenings of August 6, 2002 did nothing to instill confidence in anyone. Instead of completing an investigation that was plainly important to the Board of BTWC, he returned to his vacation. BTWC Exhibit 5, p.72. When a member of the Board expressed dissatisfaction with his performance, he got into a shouting match with that Board member. BTWC Exhibit 5, pp.95-96. There is no record evidence presented by Sherrod to gainsay any of this (a difficult task, indeed, given that so much of it is based upon Sherrod's own testimony), so it cannot be said that Sherrod was, in fact, qualified for the position. As previously noted a plaintiff who has failed to perform his job adequately is unqualified for his position and cannot make out a *prima facie* case of discrimination. BTWC Exhibit 13.

*See* Spangle v. Valley Forge Sewer Authority, 839 F.2d 171, 173-74 (3d Cir.1988); Wilson v. U.S. Air Express, 2001 WL 856948 (E.D.Pa. 2001).

Sherrod's insistence on the importance of Bessetti's having been placed "in charge" of the facility, with full powers, stems from his need to find a comparator, some similarly-situated person whom he can claim to have been treated differently than. The comparison, however, is still not a valid one. Bessetti was not Sherrod's replacement before or after August 6, 2002, and there is no evidence – beyond Sherrod's bare, unsupported, assertions - that Bessetti ever held the type of discretionary authority over employees that would have made him culpable of the various system failures that occurred on August 6, 2002. His obligations, and those of Sherrod, were never the same, and Sherrod has presented no evidence to the contrary.

Sherrod offers no explanation of his own failure to take or recommend disciplinary action against Bessetti at any time before August 12, 2002. BTWC Exhibit 5, p.26. Sherrod testified at his deposition that he wanted to talk to Bessetti before taking any action, but as important as this was to him, he decided to complete his vacation, and them talk to his mentor, before trying to do so. Exhibit 5, pp.72, 102-103.

Consequently, Bessetti is an inappropriate comparator for Sherrod. *See* Radue v. Kimberly Clark Corp., 219 F.3d 612, 618 (7th Cir.2000); Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir.1999); Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir.1988); Maull v. Division of State Police, 141 F.Supp.2d 463, 483 (D.Del.2001)

It must also be reiterated that Sherrod was replaced by another African-American, Jeffres, who sat on the BTWC Board at the time of Sherrod's suspension and

ultimate termination.  Exhibit 7.  This further dilutes Sherrod's claims of discrimination. Burch v. WDAS AM/FM, AM.FM INC, 2002 WL 1471703 (E.D.Pa.), at *7 (Where Plaintiff was replaced by a person in his protected class and has not presented competent evidence to support an inference that he was terminated because of his race he failed to satisfy the fourth element of a prima facie case).  Jeffres is the appropriate comparator, but since he and Sherrod are of the same protected class, Sherrod cannot meet the fourth element of his *prima facie* burden.  Sherrod is entitled to no inference in this regard, nor (as noted above) is he entitled to any favorable inference because of Coleman's purported use of the word "nigger."

### The "Pretext" Analysis

It is clear from discovery in this matter that neither Sherrod nor his counsel believe that the August 6, 2002 incident was adequately investigated, and as expected, they assert that Sherrod was prevented from completing his investigation and that this establishes pretext.  The assertion is without merit.

To discredit the legitimate reason proffered by the employer, Sherrod must present evidence demonstrating such weaknesses, implausibilities, inconsistencies, contradictions or incoherence in that reason that one reasonably could conclude it is incredible and unworthy of belief. Simpson v. Kaye Jewelers, Div. of Serling, Inc., 142 F.3d 639, 643-44 (3d Cir.1998); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir.1993). He has absolutely failed to do so.  Sherrod cannot now simply by showing that the adverse employment decision was mistaken, wrong, imprudent, unfair or even incompetent. *See*

Fuentes, 32 F.3d at 765 ("to discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is 'wise, shrewd, prudent or competent' "); Hicks v. Arthur, 878 F.Supp. 737, 739 (E.D.Pa.) (that a decision is ill-informed or ill-considered does not make it pretextual), aff'd, 72 F.3d 122 (3d Cir.1995); Doyle v. Sentry Ins., 877 F.Supp. 1002, 1009 n. 5 (E.D.Va.1995) (relevant issue is perception of decision maker); Orisakwe v. Marriott Retirement Communities, Inc., 871 F.Supp. 296, 299 (S.D.Tex.1994) (employer who wrongly believes there is legitimate reason to terminate employee does not discriminate when he acts on that belief).

Sherrod offers no response the other, non-discriminatory, reasons why members of the Board might have supported his termination that he posited in his own deposition. With some, there were differences in management styles (Faulkerson) (Exhibit 5, pp.14-16), others supposedly wanted his job (Gambill, Coleman, Jeffres).  Exhibit 5, pp.16, 90 and 97.  This comports with Jeffres testimony that Sherrod, on August 12, 2002, said that "they [Board members] been after me for a very long time, and I'm just tired of it." Exhibit 7, p.58.  Sherrod cannot overcome these admissions by affidavit or otherwise. Penny v. United Parcel Service, 128 F.3d 408, 415 (6th Cir.1997) (party cannot create genuine issue of material fact by filing affidavit that contradicts own deposition testimony); Darnell v. Target Stores, 16 F.3d 174, 179 (7th Cir.1994) (plaintiff cannot create genuine issue of material fact to defeat summary judgment by relying on contradictory deposition testimony and affidavits by plaintiff); Babrocky v. Jewel Food

Co., 773 F.2d 857, 861-62 (7th Cir.1985) (summary judgment granted when plaintiff contradicted own admission contained in earlier statement).

The ultimate burden of showing that an illegal, discriminatory, animus was involved in the decision-making process always rests squarely with Sherrod. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). He has produced no such evidence. There is no evidence that BTWC terminated its African-American executive director *because of his race*, and then turn around and replace him with *another* African-American executive director. It is not enough for Sherrod to demonstrate that he was terminated <u>and</u> he is Africa-American; to the contrary, he must show that he was terminated <u>because</u> he is African-American.

> **B.    Sherrod both has failed to state a claim under Pennsylvania's Wage Payment and Collection Law.**

Sherrod acknowledges that he is at-will employee, and he acknowledges that he performed no services for BTWC after August 12, 2002. Based on those two facts alone, his claims under the WPCL fail. The WPCL, of course, does not create any substantive rights in individuals, and Sherrod has failed to produce any evidence of a breach of contract or policy by BTWC that would entitle him to relief.

## IV.  CONCLUSION

WHEREFORE, the Defendant, Booker T. Washington Center, demands judgment in its favor and against the Plaintiff, James Sherrod, as to all claims, together with an award of costs, counsel fees, and such other relief as this Honorable Court shall deem necessary and just.

        Respectfully submitted,

        QUINN, BUSECK, LEEMHUIS, TOOHEY
        & KROTO, INC.


        By  /s/Arthur D. Martinucci
            Arthur D. Martinucci, Esquire
            Pa. I.D. No. 63699
            2222 West Grandview Boulevard
            Erie, PA  16506-4509
            (814) 833-2222
            Attorney for the Defendant,
            Booker T. Washington Center